Aluminum and Metal Service, Inc. v. Commissioner.
Aluminum & Metal Service, Inc. v. Commissioner
Docket No. 1956-63.
United States Tax Court
T.C. Memo 1965-129; 1965 Tax Ct. Memo LEXIS 200; 24 T.C.M. (CCH) 660; T.C.M. (RIA) 65129; May 13, 1965
*200 Howard R. Slater, 77 W. Washington St., Chicago, Ill., for the petitioner. Helen A. Viney, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent has determined a deficiency in the income tax of petitioner for the fiscal year ended April 30, 1960, in the amount of $55,017.51. The only issue raised by the pleadings is whether respondent has erred in disallowing the exclusion from petitioner's taxable income for its fiscal year ended April 30, 1958, of the amount of $90,000 received by it in settlement of a suit for damages and in the treatment of such sum as ordinary income in the computation of petitioner's operating loss deduction on a carry-forward basis for the year at issue. Findings of Fact The stipulated facts are found as stipulated. Petitioner, Aluminum and Metal Service, Inc., hereinafter sometimes referred to as Aluminum, a corporation, was incorporated under the laws of Illinois on May 6, 1955. Its principal place of business during the fiscal years April 30, 1956, through April 30, 1960, was at Cicero, Illinois. Its business consisted of the distribution of aluminum and steel products which were disbursed from *201 its warehouse. It filed income tax returns for the fiscal years ended April 30, 1956, through April 30, 1960, with the district director at Chicago, Illinois. Except for the fiscal year ended April 30, 1960, it showed no profit on its returns and no income tax was due to be paid. On or about May 6, 1955, Aluminum entered into an agreement with Aluminum Transatlantic, Inc., hereinafter sometimes referred to as Transatlantic, a foreign corporation, for the purchase of aluminum. The agreement entered into between Aluminum and Transatlantic stated the following: TRUST RECEIPT Received from ALUMINUM TRANSATLANTIC, Inc. In consideration of the receipt of the said Aluminum and our being permitted to purchase and withdraw, from time to time, such quantities as we may desire, we agree at our own cost and expense to warehouse, and to hold in trust, the said Aluminum for, and in the name of, Aluminum Transatlantic, Inc. as the property of said Company and agree to return on demand said Aluminum, or such part thereof, as we have not purchased prior to said demand. Under the terms of the above agreement, hereinafter sometimes referred to as Trust Receipt Agreement, Aluminum maintained *202 certain inventories of aluminum forms shipped to its warehouse by Transatlantic. Pursuant to the terms of the Trust Receipt Agreement, Aluminum withdrew varying quantities of aluminum from the stock held in trust for Transatlantic. It recorded such withdrawals on its books as open account balances due from it to Transatlantic. A dispute arose between the two corporations as to the amounts of aluminum held in trust by Aluminum for the benefit of Transatlantic and the amount withdrawn by it and for which it would be indebted on open account to Transatlantic. On January 8, 1957, Transatlantic instituted an action in replevin against Aluminum in the Superior Court of Cook County, Illinois, #57 S 11. The Complaint stated that unless property valued at $268,660.32 was returned by Aluminum, Transatlantic would be damaged in the amount of $268,660.32. Transatlantic also claimed the sum of $10,000 as damages for wrongful detention and use of its property. On January 30, 1957, Transatlantic filed a Complaint against Aluminum in the Superior Court of Cook County, Illinois, #57 S 1520. In the Complaint, Transatlantic claimed that Aluminum was indebted to it on December 31, 1956, in the amount *203 of $97,657.46 for goods purchased by it and asked for judgment in the sum of $97,657.46, plus costs. On May 10, 1957, in #57 S 11, Transatlantic filed an "Additional or Second Count" which alleged that it had received back certain of its property but that Aluminum still retained property belonging to it in the amount of $101,774.08. Transatlantic prayed for judgment in the amount of $101,774.08 and damages in the amount of $5,000. On June 3, 1957, in #57 S 11, Aluminum filed an "Amended Answer to Amended Complaint in Replevin" and "Counter-Complaint." It alleged that due to Transatlantic's failure to comply with both oral and written contracts and due to the acts of Transatlantic, that Aluminum had been injured. Aluminum prayed for judgment in the Counter-Complaint in the amount of $1,000,000, plus costs. In requesting such money judgment, petitioner made specific allegations of damage in the amount of $100,000 for moneys expended by it for the benefit of Transatlantic for which it had not been reimbursed, one in the amount of $250,000 for loss of profits due to Transatlantic's breach of its contract, and one in the amount of $500,000 for total destruction of petitioner's business *204 through Transatlantic's alleged libel and slander of petitioner. On December 13, 1957, a "Stipulation" was filed in #57 S 11 which stated as follows: It is hereby stipulated and agreed between the parties to the above entitled cause, by their respective attorneys, that an Order may be entered therein: 1. Dismissing the said cause, without costs, and with prejudice as to all of the parties thereto; and 2. Terminating and cancelling the replevin bond given by the Plaintiff in the said cause and discharging the surety upon the said bond. In accordance with the above stipulation, the following Order was entered on December 13, 1957, in #57 S 11: Upon Stipulation of the attorneys for all of the parties to the above entitled cause, IT IS HEREBY ORDERED: 1. That the said cause be and the same is hereby dismissed, without costs, with prejudice to all of the parties thereto; and 2. That the replevin bond given by the plaintiff in the said cause is hereby terminated and cancelled and the surety upon the said bond is hereby discharged. On December 13, 1957, a "Stipulation" was filed in #57 S 1520 which stated as follows: It is hereby stipulated and agreed between the parties *205 to the above entitled cause, by their respective attorneys, that an Order may be entered therein, dismissing the said cause, without costs, and with prejudice as to all of the parties thereto. In accordance with the above stipulation, an Order was entered on December 13, 1957, in #57 S 1520, as follows: Upon Stipulation of the attorneys for all of the parties to the above entitled cause, IT IS HEREBY ORDERED that the said cause be and the same is hereby dismissed, without costs, with prejudice to all of the parties thereto. On the basis of the stipulations and orders entered in #57 S 11 and #57 S 1520, petitioner and Transatlantic agreed that - 1. The open account balance of petitioner due and owing Transatlantic was $198,624.20; and 2. Transatlantic agreed to pay petitioner the sum of $148,624.20 in settlement of its claimed damages. As a result of the suits, Aluminum satisfied its accounts payable due and owing Transatlantic in the amount of $198,624.20 in the following manner: 1. Petitioner offset the $148,624.20 agreed to be payable by it to Transatlantic against the open account balance of $198,624.20 which it owed Transatlantic; and 2. Petitioner paid Transatlantic *206 $50,000. On its books, Aluminum recorded the transaction as follows: J. 43
Dr.
Cr.
12/31/57 Accounts
Payable - Trade $198,624.20
Notes payable -
Aluminum Trans-
atlantic, Inc.
$50,000.00
Miscellaneous In-
come - To record
settlement of
A.T.I. account
148,624.20
On its tax return for the fiscal year ended April 30, 1958, in a separate schedule attached to the return, Aluminum reported the receipt of $148,624.20 as follows: LINE 14 - OTHER INCOME
SCHEDULE M - RECONCILIATION OF
EARNED SURPLUS
Settlement of litigation with Alu-
minum Transatlantic Inc. - 57S1520
and counterclaim for damages
$148,624.20
Portion of recovery regarded as non-
taxable compensation for damages,
in accordance with opinion of Com-
pany counsel
Line 4 - Schedule M
90,000.00
Balance of recovery - Line 14
$ 58,624.20
Aluminum did not have taxable income for any of the fiscal years ended April 30, 1956, through April 30, 1959. It reported losses for those years as follows: Fiscal year ended
Net operating
April 30
loss claimed
1956
$ 17,092.46
1957
36,202.20
1958
84,876.21 *
1959
8,319.75
Total
$146,490.62
*207 Footnotes
*. This amount did not take into account $90,000.00 of the $148,624.20 received as damages (from Transatlantic) and reported as "other nontaxable income" on Line 4, Schedule M of the return for the fiscal year 1958. On its income tax return for the fiscal year ended April 30, 1960, Aluminum claimed a net operating loss deduction in the amount of $146,490.62. The petitioner had no cost basis attributable to or investment in goodwill at the time the payment here involved was received. Ultimate Finding The amount of $148,624.20 received by Aluminum from Transatlantic in settlement of claimed damages is includable at ordinary income rates in petitioner's gross income. Opinion The year at issue is petitioner's fiscal year ended April 30, 1960. The issue to be decided arises because petitioner, in its return for that fiscal year, deducted net operating losses carried forward from prior years including the fiscal year ended April 30, 1958, in the aggregate amount of $146,490.62, of which the respondent has disallowed the amount of $90,000. Petitioner's claimed loss for the latter year was computed by it on the advice of its counsel without including in its gross income the sum of $90,000 which was a portion of the amount of $148,624.20 which it received from Transatlantic in settlement of a suit for damages by Transatlantic and a cross-suit for damages by petitioner. As we understand petitioner's position it is contended the $90,000 amount represents that part of the total settlement which is payment for damage to its business goodwill and for claimed destruction of its business as a whole, is therefore a replacement of its capital and noncompensatory and, in turn, excludable from its gross income. We think petitioner has failed to establish the noncompensatory and capital nature of the settlement amount. The negotiations leading to the settlement, the stipulations of the parties, and the resulting orders of the court dismissing the action and counter-action for damages are not sufficiently informative or definitive to be of aid in determining this issue. We are left to a large extent with the pleadings involved in petitioner's counter-claim for damages from which to glean the purpose for which the settlement amount was paid to and received by petitioner. The oral testimony and exhibits received at the trial merely tend to establish that petitioner was damaged by Transatlantic, but such evidence fails to demonstrate the purpose for or the nature of the settlement. The burden to make such a showing is clearly that of petitioner. Petitioner's cross-complaint in Transatlantic's suit for damages contains specific claims for damages in three categories; $100,000 damages for moneys expended by it for the benefit of Transatlantic for which it had not been reimbursed, $250,000 for profits lost by petitioner due to Transatlantic's breach of its contract, and $500,000 for the total destruction of petitioner's business through Transatlantic's libel and slander of petitioner. There can be no doubt that if the settlement amount received by petitioner was paid for the purpose of supplanting petitioner's loss of profit, past or future, it represented not only income to petitioner, but ordinary income. (C.A. 7, 1962), affirming , certiorari denied ; (C.A. 8, 1962), affirming , certiorari denied ; . Petitioner has failed utterly to sustain its burden of showing that this category of damage was not the sole reason for payment of the settlement by Transatlantic. Respondent has determined that it was the sole reason and the presumption remains unchallenged that his determination is correct. The $90,000 excluded from its gross income by petitioner for its fiscal year ended April 30, 1958, was properly to have been included therein as ordinary income. The above decision having been reached and there being no dispute between the parties relating to any other factor involved in the computation of petitioner's net operating loss for prior years. Decision will be entered for the respondent. ↩